IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-954-D

LEROY COLEMAN, JR.           )
                             )
            Plaintiff,       )
                             )
       v.                    )    **ORDER**
                             )
ALTEC, INC.,                 )
                             )
            Defendant.       )

On December 28, 2016, Leroy Coleman, Jr. ("Coleman" or "plaintiff), proceeding pro se, filed a complaint against Altec, Inc. ("Altec" or defendant") alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, and wrongful discharge in violation of North Carolina public policy. See Compl. [D.E. 5]; [D.E. 34]. On November 17, 2017, Altec moved for summary judgment [D.E. 22] and filed a memorandum in upport [D.E. 23]. On February 5, 2018, Coleman responded in opposition [D.E. 45]. As explained below, the court grants in part and denies in part Altec's motion for summary judgment.

I.

Altec provides products and services to the electric utility, telecommunications, tree care, lights and signs, and contractor markets. See [D.E. 24] ¶ 1. In 2011, Altec hired Coleman to work at Altec's facility in Creedmoor, North Carolina. See Jeff Tingen Decl. [D.E. 28] ¶ 2. In 2014, Altec promoted Coleman to the group leader position of the second shift. See Chris Rice Decl. [D.E. 31] ¶ 2. In this position, Coleman reported to Chris Rice who was the second shift supervisor. See id.

Beginning in the fall of 2014, Chris Rice, James Ladd, Mark Waters, William Slaughter, and Jeff Tingen touched or slapped Coleman on different occasions. See Coleman Dep. [D.E. 26] 2–4,

5–8, 12–21, 33–36, 44, 47–49. In March 2015, Coleman sent Tingen a certified letter stating that Rice had hit him on the arm in December 2014. See Jeff Tingen Decl. [D.E. 28] ¶ 4; [D.E. 28-1]. In June and July 2015, Coleman informed Sandra Whitfield, a senior human resources specialist, that Ladd, Slaughter, Waters, and Tingen had also touched him. See Sandra Whitfield Decl. [D.E. 29] ¶¶ 4–6. Around the same time, Altec demoted Coleman back to a non-lead position. See Coleman Dep. at 50; Tingen Decl. ¶ 8; [D.E. 28-4].

Between November 2015 and February 2016, Coleman filed criminal assault charges against Rice, Ladd, Waters, and Slaughter. See Coleman Dep. at 44–46; Tingen Decl. ¶ 11. After learning about the charges, Patrick Wooten, the facility manager, decided to fire Coleman because he believed the underlying charges were frivolous and caused a disruption to the workplace. See Patrick Wooten Decl. [D.E. 27] ¶¶ 4–5. Wooten consulted with Tingen concerning the best way to inform Coleman of his termination, and they decided to hold a meeting with Coleman together on February 19, 2016. See Wooten Decl. ¶ 5.

On February 19, 2016, Wooten and Tingen asked Coleman to come to Tingen's office. See id. ¶¶ 5–6. Coleman came to Tingen's office, but he refused to sit down and talk. See id. ¶ 6; Tingen Decl. ¶ 14. After a disagreement, Coleman left the meeting. See Tingen Decl. ¶¶ 14–16. Tingen followed Coleman and asked Coleman to return to the meeting. See id. ¶ 16. Coleman refused to return to the meeting, and Tingen told Coleman he was fired. See id. ¶ 17.

Approximately a week before Altec terminated Coleman's employment, Coleman asked Whitfield for a copy of the letter he sent to human resources concerning the incident in which Rice touched him. See Coleman Dep. at 38–39. Whitfield told Coleman that he needed to ask Tingen for a copy of the letter. See id. Coleman then went to Tingen's office to ask for a copy of the letter. See id. at 39. In response to Coleman's request, Tingen allegedly responded "you stupid nigger."

2

Id. at 39; Tingen Decl. ¶ 22. Tingen then said "You don't have a copy? You don't have a copy of it?" Coleman Dep. at 39. Coleman walked out of Tingen's office and did not respond. See id.

On August 11, 2016, Coleman filled out an EEOC intake questionnaire. See [D.E. 34-1]. On September 19, 2016, Coleman filed a charge of discrimination with the EEOC alleging race discrimination and retaliation. See [D.E. 34].

II.

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

A.

Coleman alleges that he was discriminated against based on his race when (1) he was not selected for a "leadman" position at Altec; (2) he was demoted in July 2015; (3) Tingen harassed him using a heinous racial epithet on approximately February 12, 2016; and (4) he was fired on February

3

19, 2016. See [D.E. 34-1] 1; [D.E. 23] 13.

1.

Coleman's claims concerning his non-selection and demotion are untimely. Under Title VII, Coleman had to file an EEOC charge within 180 days of each discrete adverse employment action described in the complaint. See, e.g., 42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109–15 (2002); EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 110 (1988); Williams v. Giant Food Inc., 370 F.3d 423, 428 (4th Cir. 2004); Barcliff v. N.C. League of Municipalities, No. 5:10–CV–244–D, 2011 WL 3290578, at *2 (E.D.N.C. Aug. 1, 2011) (unpublished); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 539 (E.D.N.C. 2008); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 606 n.3 (E.D.N.C. 2006). Generally, each adverse employment action "starts a new clock" for filing an EEOC charge concerning that action. See Morgan, 536 U.S. at 114; White v. Tire Ctrs., LLC, No. 3:13-cv-2-GCM, 2013 WL 1146255, at *3 (W.D.N.C. Mar. 19, 2013) (unpublished). Generally, "only incidents that took place within the timely filing period are actionable." Morgan, 536 U.S. at 114.

Coleman filed his EEOC charge on August 11, 2016, at the earliest.[1] Coleman's alleged non-selection occurred in March 2015 and his demotion occurred in July 2015, well outside the 180-day filing period. Accordingly, Coleman's non-selection and demotion claims are time-barred. See, e.g., Morgan, 536 U.S. at 114; Roach v. Hilton World-Wide, Inc., No. 5:12–CV–309–D, 2013 WL

---

[1] An EEOC filing (such as an intake questionnaire) may be considered a charge if it contains all regulatory requirements and can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); see Pizio v. HTMT Glob. Sols., 555 F. App'x 169, 173–76 (3d Cir. 2014) (unpublished); EEOC v. Summer Classics, Inc., 471 F. App'x 868, 871–72 (11th Cir. 2012) (per curiam) (unpublished). Altec does not dispute that Coleman filed his EEOC charge on August 11, 2016, when he submitted an intake questionnaire. See [D.E. 23] 13.

4

556195, at *2 (E.D.N.C. Feb. 12, 2013) (unpublished), aff'd, 533 F. App'x 341 (4th Cir. 2013) (per curiam) (unpublished); Harris v. Cmty. Alts., No. 5:11–CV–52–D, 2011 WL 2111851, at *1 (E.D.N.C. 2011) (unpublished); Bratcher, 545 F. Supp. 2d at 539.

2.

As for Coleman's hostile work environment claim, to sustain a hostile work environment claim under Title VII, an employee must prove that (1) he experienced unwelcome conduct; (2) the conduct was based on a protected characteristic under Title VII; (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) the conduct is imputable to the employer. See, e.g., Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc); Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011); EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 327 (4th Cir. 2010); Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc). An employee also must show that his protected characteristic under Title VII was the "but for" cause of the alleged harassment. See, e.g., Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007).

To determine whether conduct was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and to create an abusive working environment, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the conduct to be sufficiently severe or pervasive as to alter his conditions of employment. See, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto, 786 F.3d at 277. Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is

5

objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

The objective component helps courts "to police the baseline for hostile environment claims." Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc) (quotation omitted). The court considers the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. The conduct must be severe or pervasive to be actionable. See id.; Faragher, 524 U.S. at 787–88; Boyer-Liberto, 786 F.3d at 277–78. Title VII does not create "a general civility code for the American workplace." Oncale, 523 U.S. at 80. The "conduct must . . . amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788; see Boyer-Liberto, 786 F.3d at 277–81. Simple teasing, sporadic rude language, offhand comments, jokes related to a protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68–69 (2006); Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; cf. Boyer-Liberto, 786 F.3d at 277–81. Likewise, mere rude or insensitive treatment cannot sustain a hostile work environment claim. See, e.g., Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006); see also Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 787–88; Oncale, 523 U.S. at 81–82; Brown v. Wake Cty. Gov't, No. 5:16-CV-806-D, 2017 WL 2982971, at *5 (E.D.N.C. July 12, 2017) (unpublished); cf. Boyer-Liberto, 786 F.3d at 277–81; Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207–10 (4th Cir. 2014); Freeman v. Dal-Tile Corp., 750 F.3d 413, 420–24 (4th Cir. 2014); Okoli, 648 F.3d at 220–22.

Although hostile work environment claims often involve repeated conduct, an "isolated

incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious." Boyer-Liberto, 786 F.3d at 277 (quotations and alterations omitted); see Pryor v. United Air Lines, Inc., 791 F.3d 488, 496 (4th Cir. 2015); Okoli, 648 F.3d at 220 & n.5. Furthermore, in assessing the severity of the harassing conduct, the status of the harasser is an important factor. See Boyer-Liberto, 786 F.3d at 278; Sonnier v. Diamond Healthcare Corp., 114 F. Supp. 3d 349, 356 (E.D. Va. 2015). A "supervisor's power and authority invests his or her harassing conduct with a particular threatening character." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998); see Boyer-Liberto, 786 F.3d at 278.

Tingen vehemently denies Coleman's allegation that he used a racial epithet, and other witnesses support Tingen. Nonetheless, genuine issues of material exist concerning whether Tingen used the racial epithet and whether Tingen's conduct was sufficiently severe to alter the conditions of Coleman's employment and create a hostile work environment, particularly in light of Tingen's role as a human resources manager. See, e.g., Pryor, 791 F.3d at 496–97; Boyer-Liberto, 786 F.3d at 280.[2] Accordingly, the court denies Altec's motion for summary judgment concerning Coleman's hostile work environment claim.

3.

As for Coleman's claim that Altec terminated his employment due to his race, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish such a violation of Title VII in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated an

---

[2] Altec does not dispute that Tingen's alleged actions are imputable to Altec. See [D.E. 23] 16–17.

7

employer's adverse employment action. If a plaintiff does not have any direct evidence of illegal discrimination, the plaintiff may proceed under the burden-shifting pretext framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See generally Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013).

Direct evidence is evidence from which no inference is required. To show race or gender discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. See generally Hill, 354 F.3d at 286–91. Such direct evidence would include a decisionmaker's statement that he terminated the plaintiff's employment due to his race or gender. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the allegedly discriminatory action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151–52 (2000).

Coleman has not produced any direct evidence that Altec terminated his employment due to his race. Although Tingen allegedly directed a racial epithet at Coleman approximately one week before Coleman's termination, the undisputed evidence shows that Wooten, not Tingen, made the decision to terminate Coleman. See Wooten Decl. ¶¶ 4–5; Tingen Decl. ¶ 12. Moreover, no evidence suggests that Tingen's alleged comment influenced Wooten, the actual decisionmaker concerning the termination. See, e.g., Torgerson v. City of Rochester, 643 F.3d 1031, 1044 (8th Cir. 2011); Arraleh v. Cty. of Ramsey, 461 F.3d 967, 975 (8th Cir. 2006); Hill, 354 F.3d at 286. Furthermore, Coleman has not shown any link between the alleged racial epithet and the decisional process itself. See, e.g., Finkle v. Howard Cty., 640 F. App'x 245, 248 (4th Cir. 2016) (per curiam) (unpublished); Hill, 354 F.3d at 286. Thus, because Coleman has not shown direct evidence of

8

discriminatory termination, Coleman relies on the burden-shifting analysis in McDonnell Douglas.

Under McDonnell Douglas, a plaintiff may prove a prima facie case of illegal discrimination by showing that (1) he is a member of a protected class; (2) he was discharged; (3) at the time of his discharge, he was performing her job at a level that met his employer's legitimate expectation; and (4) similarly situated employees received more favorable treatment. See, e.g., Hill, 354 F.3d at 285; White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence that the adverse employment action was "for a legitimate, nondiscriminatory reason." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). This burden is one of production, not persuasion. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509–11 (1993). If the employer offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves, 530 U.S. at 143; King v. Rumsfield, 328 F.3d 145, 150–54 (4th Cir. 2003). A plaintiff can demonstrate pretext by showing that the employer's "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted).

Assuming without deciding that Coleman established a prima facie case, Altec articulated a non-discriminatory reason for firing Coleman. Altec fired Coleman because Coleman filed criminal assault charges against five employees, which Wooten believed to be frivolous and disruptive to the work environment. See Wooten Decl. ¶¶ 4–5. This reason is a legitimate, non-discriminatory reason for firing Coleman. See, e.g., Morrall v. Gates, 370 F. App'x 396, 398 (4th Cir. 2010) (per curiam) (unpublished); EEOC v. Electrolux Corp., 611 F. Supp. 926, 932 (E.D. Va.

9

1985). Thus, the burden shifts back to Coleman to demonstrate that Altec's non-discriminatory reason is a pretext for race discrimination. See, e.g., Hux v. City of Newport News, 451 F.3d 311, 314–15 (4th Cir. 2006). Coleman has failed to offer any evidence concerning pretext. Accordingly, the court grants Altec's motion for summary judgment on Coleman's discriminatory termination claim.

B.

As for Coleman's retaliation claim, Coleman contends that he was fired in retaliation for reporting Tingen to human resources for touching him. See [D.E. 34]; Coleman Dep. at 59. Coleman also argues that he was retaliated against when Rice conducted Coleman's performance review after Coleman complained to human resources that Rice hit him. See Coleman Dep. at 58.

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) his employer took an action against him that a reasonable employee would find materially adverse; and, (3) a casual connection existed between the protected activity and the adverse employment action. See, e.g., Burlington N. & Santa Fe Ry., 548 U.S. at 67–70; DeMasters v Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015); Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015); Boyer-Liberto, 786 F.3d at 271; Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410 (4th Cir. 2013); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007); Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001).

As for the first element, protected activities include using "informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259

10

(4th Cir. 1998); see Chang Lim v. Azar, 310 F. Supp. 3d 588, 603–04 (D. Md. 2018). Furthermore, the plaintiff must show that the employment practices he opposed were either "actually unlawful under Title VII" or that he reasonably believed the employment practices were unlawful. Breeden, 532 U.S. at 271; DeMasters, 796 F.3d at 417; Boyer-Liberto, 786 F.3d at 282; Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011); EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005); Chang Lim, 310 F. Supp. 3d at 603–04. "Complaints about management activities that would not constitute unlawful discrimination do not count as protected activity." Chang Lim, 310 F. Supp. 3d at 604; see Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216–17 (4th Cir. 2002); Brown v. Goodwill Indus. of E. N.C., Inc., No. 4:17-CV-144-D, 2018 WL 2422315, at *2–3 (E.D.N.C. May 29, 2018) (unpublished).

As for Coleman's retaliation claim concerning Rice giving Coleman a performance review, this claim is untimely. See Morgan, 536 U.S. at 114. Rice gave Coleman a performance review in February and July 2015. See Rice Decl. ¶¶ 9, 17. As stated, Coleman did not file his EEOC charge until August 2016.

Alternatively, even viewing the evidence in the light most favorable to Coleman, Coleman did not produce any evidence that he engaged in a protected activity. Although Coleman reported to human resources that Rice touched him, Coleman did not allege that such incident was racially motivated. See [D.E. 28-1]; Coleman Dep. at 58–60. Complaints about employment misconduct such as hitting or touching must "concern race discrimination to constitute protected activity under Title VII." Howard v. Indianapolis Pub. Sch., 727 F. App'x 198, 201–02 (7th Cir. 2018) (per curiam) (unpublished). Furthermore, Coleman did not produce any evidence that Rice's participation in his performance review constitutes an action that a reasonable employee would find materially adverse. "An adverse employment action is a discriminatory act that adversely affects the

11

terms, conditions, or benefits of the plaintiff's employment." Holland, 487 F.3d at 219; see James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004); Cherry v. Elizabeth City State Univ., 147 F. Supp. 3d 414, 426 (E.D.N.C. 2015); Mitchell v. N.C. Div. of Emp't Sec., 76 F. Supp. 3d 620, 625 (E.D.N.C. 2014), aff'd, 599 F. App'x 517 (4th Cir. 2015) (per curiam) (unpublished); Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 442–43 (E.D.N.C. 2012). Rice's participation in Coleman's performance review is not a materially adverse action. See, e.g., Mitchell, 76 F. Supp. 3d at 625; Holley, 846 F. Supp. 2d at 442–43.

As for Coleman's retaliation claim concerning his termination, this claim also fails. Although Coleman reported to human resources that Tingen touched him, Coleman did not allege that such incidents were racially motivated. See Coleman Dep. at 58–60. Complaints about employment misconduct such as hitting or touching must "concern race discrimination to constitute protected activity under Title VII." Howard, 727 F. App'x at 201–02. Furthermore, the time lapse between Coleman reporting the touching incidents and his termination defeats any inference of causation. On July 30, 2015, Coleman reported to Sandra Whitfield that Tingen had touched him on two occasions. See Whitfield Decl. ¶ 6. Coleman, however, was not terminated until February 2016. This time lapse defeats any inference of causation. See, e.g., Breeden, 532 U.S. at 273–74; Hooven–Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation."); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (a "lengthy time lapse" between protected activity and adverse employment action negates any inference of causation); Graves v. Bank of America, N.A., 54 F. Supp. 3d 434, 443 (M.D.N.C. 2014); cf. King, 328 F.3d at 151 (a two-month time lapse between protected activity and adverse employment action is sufficient to show the causation element of a prime facie case of retaliation). Accordingly, the court grants summary judgment to Altec on

12

Coleman's retaliation claim.

C.

As for Coleman's wrongful discharge claim, under North Carolina law, an employer generally may terminate an at-will employee for any reason. Garner v. Rentenbach Constructors Inc., 350 N.C. 567, 568–72, 515 S.E.2d 438, 439–41 (1999). North Carolina recognizes a narrow exception to that general rule if an employee's termination violates North Carolina public policy. See, e.g., Whitt v. Harris Teeter, Inc., 359 N.C. 625, 625, 614 S.E.2d 531, 532 (2005) (per curiam) (adopting dissenting opinion at 165 N.C. App. 32, 43–50, 598 S.E.2d 151, 159–63 (2004) (McCullough, J., dissenting)); Garner, 350 N.C. at 568–72, 515 S.E.2d at 439–41; Amos v. Oakdale Knitting Co., 331 N.C. 348, 350–54, 416 S.E.2d 166, 167–70 (1992); Coman v. Thomas Mfg. Co., 325 N.C. 172, 176–78, 381 S.E.2d 445, 447–49 (1989). To prove a claim of wrongful discharge in violation of North Carolina public policy, a plaintiff must identify and rely upon a specific North Carolina statute or North Carolina constitutional provision stating North Carolina's public policy. See Garner, 350 N.C. at 568–72, 515 S.E.2d at 439–41; Amos, 331 N.C. at 350–54, 416 S.E.2d at 167–70; Coman, 325 N.C. at 176, 381 S.E.2d at 447; Horne v. Cumberland Cty. Hosp. Sys., Inc., 228 N.C. App. 142, 146, 746 S.E.2d 13, 17–19 (2013); Gillis v. Montgomery Cty. Sheriff's Dep't, 191 N.C. App. 377, 379–81, 663 S.E.2d 447, 449–50 (2008); Whitings v. Wolfson Casing Corp., 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005); Considine v. Compass Grp. USA, Inc., 145 N.C. App. 314, 321, 551 S.E.2d 179, 184 (2001), aff'd, 354 N.C. 568, 557 S.E.2d 528 (2001) (per curiam).

Coleman relies on N.C. Gen. Stat. § 143-422.2 as the source of North Carolina's public

13

policy.[3] Coleman contends that Altec terminated his employment due to his race. Coleman's claim fails for the same reason his Title VII race-discrimination claim fails. See, e.g., Ricketts v. Logics, LLC, No. 5:15-CV-293-D, 2017 WL 4293406, at *8 (E.D.N.C. Sept. 27, 2017) (unpublished); McDougal-Wilson, 427 F. Supp. 2d at 621. Accordingly, the court grants Altec's motion for summary judgment on Coleman's wrongful discharge claim.

III.

In sum, the court GRANTS in part and DENIES in part Altec's motion for summary judgment [D.E. 22], DENIES as untimely Coleman's motion for summary judgment [D.E. 64], and DENIES Coleman's motion to compel [D.E. 40]. The parties shall engage in a court-hosted mediation with United States Magistrate Judge James E. Gates.

SO ORDERED. This 7 day of September 2018.

JAMES C. DEVER III
Chief United States District Judge

---

[3] N.C. Gen. Stat. § 143-422.2 states:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.
>
> It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

N.C. Gen. Stat. § 143-422.2.